**UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| ANTHONY DAVID ATKINSON, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Case No. 14 cv 9923 |
| v. ) | |
| ) | Judge Sharon Johnson Coleman |
| SG AMERICAS SECURITIES, LLC, ) | |
| ) | |
| Defendant. ) | |

**MEMORANDUM OPINION AND ORDER**

Plaintiff, Anthony David Atkinson, filed an eight-Count *pro se* Amended Complaint on March 10, 2015, alleging disability discrimination, retaliation, and wrongful discharge under the Americans with Disabilities Act, intentional infliction of emotional distress, ERISA interference and retaliation, monetary and trade manipulation, and improper medical review. Defendant, SG Americas Securities, LLC, ("SGAS") moves to dismiss and/or strike Counts IV-VII [43]. The Court heard oral argument on the motion on July 31, 2015. For the reasons stated below, the Court grants the motion.

**Background**

The following facts are derived from the Amended Complaint and taken as true for purposes of this motion. Plaintiff Atkinson began his employment with defendant SGAS, then known as Fimat Facilities Management, as an eTrading Support Analyst in August 2002. He later became an eSolutions Support Analyst until August 2013. In this role, Atkinson provided support to 500 traders and clients with electronic trading issues. His usual schedule was 6:00 a.m. to 2:30 p.m. Monday through Friday, working at a well-equipped workstation that had a wall to his left.

On October 18, 2011, Atkinson was in a motorcycle accident and went into a coma. His injuries from the accident included: total loss of hearing in the left ear; traumatic brain injury;

1

fractured skull, injuries to his wrist and arms. Six weeks after the accident, Atkinson returned to work on November 28, 2011, resuming his normal duties. On March 11, 2012, Atkinson suffered a traumatic intracerebral hemorrhage while in South Africa. Atkinson remained hospitalized in South Africa for nearly a month before returning home where he was hospitalized for several days. The brain hemorrhage left Atkinson with speech problems and balance issues.

Atkinson was originally scheduled to return to work on or about September 14, 2012, depending on his progress. His physician recommended returning on a half-day schedule to acclimate to the office and then resume full-time duties. Atkinson returned to full-time work on October 1, 2012, rather than part-time as his doctor recommended. SGAS told Atkinson the delay was to prepare his workstation. Upon his return on October 1, 2012, Atkinson's prior workstation had been dismantled and he was placed in a different workspace without a functioning phone, or a computer, and lacked many of the tools and systems access that he had prior to his injury. The other team members in his department had the tools, access, and functionality required to perform their jobs within reasonable reach of their workstations. Atkinson's prior desktop computers had been removed. They contained his work of the previous 10 years, including contacts, notes, etc. When Atkinson found his old computer in another workspace, his supervise told him he could not use it. Atkinson resumed his duties on an unused laptop. SGAS eventually provided a new desktop computer and ergonomic keyboard.

Atkinson alleges that his manager, Greg Stephens, began to unreasonably increase his workload and responsibilities, most of which were menial and normally divided among the whole team or assigned to junior staff. In January 2012, Atkinson asked his manager, Greg Stephens, the Manager of eSolutions Support US, Graham Hughes, Global Head of Front Office Support, and Lisa Foster, Human Resources Manager, for accommodations including: his old workspace where his left ear would be to the wall, an ergonomic keyboard, and a work schedule with the hours he had

2

before his injury so that he could attend therapy and medical visits in the afternoons. Foster inquired whether he was capable of performing his duties, to which Atkinson replied that he was able to perform his job functions. SGAS did not provide the accommodations.

Atkinson alleges that since his return to work and until his termination, SGAS withheld access and passwords to systems that he needed to perform his job functions. His manager has attributed e-trading system errors to him when they were due to someone else's error. Stephens refused to give Atkinson access to the error reports so that he could fix the inaccuracy. After his return to the office, Atkinson was on a variable work schedule that interfered with his ability to schedule and to attend speech and physical therapy and doctor's visits. As a result, his speech worsened.

Three months after his return to work, Atkinson formally submitted a letter of complaint, per company policy, to Lisa Foster, Harry Kaplan, Andy Roberts, Greg Stephens, and Graham Hughes, in which he outlined the following complaints: Atkinson's inability to work overtime even though his peers were allowed; their refusal to train or assist Atkinson on the systems required to do his job, including Fidessa, when his peers had already been trained on Fidessa; their refusal to provide Atkinson with equitable training and support for his Series 99 license, when his peers were given more support, and their refusal to approach FINRA to renew Atkinson's expired Series 7 license making the Series 99 unnecessary; their refusal of Atkinson's requests for error reports to clear his record when management incorrectly cited him for errors that were not his and were not found in his employment file in December 2012; their surveillance of Atkinson's phone calls without reason, when his peers' calls were not monitored. Two weeks after Atkinson submitted his complaint letter, his manager held Atkinson's 2012 Annual Performance Review, focusing on October, November, and December. Atkinson received below average ratings on his review for the first time in his career.

On January 9, 2013, SGAS responded to Atkinson's request for accommodation by moving his workstation, providing an ergonomic keyboard, and a consistent work schedule. According to Atkinson, the accommodations were temporary and he was assigned to a new project in February 2013, with a different work space and different, variable, schedule. Atkinson's new workstation was a two foot by two foot folding table directly under an IT air conditioning vent designed to cool servers. He claims he was isolated from the eSolutions Support Team and the cold air aggravated his injuries. Atkinson continued to request a change in workstation and accommodations for his injuries. In June of 2013, Atkinson alleges that SGAS required him to undergo a medical evaluation. Atkinson provided letters from his Internist and ENT doctors as documentation of his condition instead of seeing SGAS's physician.

In August 2013, SGAS informed Atkinson that his position was being eliminated and offered him a position as eSolutions Static Data Analyst, which Atkinson considered a demotion. Lisa Foster in the Human Resources department allegedly told Atkinson to take the position or SGAS would consider it a resignation. The new position meant that he had to sign various forms and waivers, which Atkinson believes compromised his rights as an employee. When SGAS bought out the previous entity Newedge USA LLC, effective January 1, 2015, Atkinson alleges that he was required to participate in a new private investment policy and a new severance policy. He requested an exemption from the investment policy to pay for his medical expenses. That request was denied. On January 14, 2015, SGAS terminated Atkinson's employment allegedly under the guise of a resignation.

Atkinson filed a charge of discrimination and retaliation with the Equal Employment Opportunity Commission on March 11, 2013. He filed an amended charge on June 18, 2014, and an additional EEOC charge on March 6, 2015. The instant lawsuit followed.

**Legal Standard**

In order to withstand a motion to dismiss pursuant to Rule 12(b)(6), the allegations must contain sufficient factual material that, when accepted as true, state a claim that is plausible on its face. *Ashcroft v. Iqbal,* 129 S.Ct. 1937, 1949 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 570 (2007). When considering a motion to dismiss, the Court accepts as true all well-pleaded facts and draws all reasonable inferences in the light most favorable to the non-moving party. *Pisciotta v. Old Nat'l Bancorp,* 499 F.3d 629, 633 (7th Cir. 2007). However, a *pro se* complaint is held to "less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519, 520, 92 S. Ct. 594, 30 L. Ed. 2d 652 (1972).

Pursuant to Rule 12(f), the court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed.R.Civ.P. 12(f). Generally, motions to strike are disfavored as they often serve to delay the proceedings. *Heller Financial, Inc. v. Midwhey Powder Co., Inc.*, 883 F.2d 1286, 1294 (7th Cir. 1989); *Anderson v. Bd. of Educ. of City of Chicago*, 169 F. Supp. 2d 864, 867 (N.D. Ill. 2001). However, motions to strike may also expedite the proceedings by removing unnecessary clutter from the complaint. *Heller Financial Inc.*, 883 F.2d at 1294.

**Discussion**

SGAS moves to dismiss Count IV (intentional infliction of emotional distress) and Count V (interference and retaliation under ERISA), to strike Count VI (improper discharge under the ADA) and Count VII (monetary and trade manipulation), and to strike or dismiss Count VIII (mandated medical review in violation of ADA). At oral argument, Atkinson voluntarily withdrew Count VI as duplicative of his ADA claims in Counts I-III. As explained below, this Court grants the remainder of the motion.

*1. Intentional Infliction of Emotional Distress*

SGAS moves to dismiss Count IV, Atkinson's intentional infliction of emotional distress pursuant to Rule 12(b)(6) for failure to state a claim and because it is preempted by the Illinois Human Rights Act. As this Court noted in *Carroll v. YMCA of Metro Chicago, LLC,* No. 13-cv-9307, 2015 WL 149024, 2015 U.S. Dist. LEXIS 3217, at *14 n.2 (N.D. Ill. Jan. 9, 2015), there is considerable disagreement in this district as to whether the IHRA bars a claim for common law IIED. Although it appears that Atkinson's IIED claim is inextricably linked to his discrimination claims under the ADA that the claim would be preempted by the IHRA, (*see Maksimovic v. Tsogalis,* 177 Ill. 2d 511, 687 N.E.2d 21, 23, 227 Ill. Dec. 98 (Ill. 1997)), this Court need not reach that issue since Atkinson fails to state a claim for IIED.

In Illinois, to state a claim for IIED Atkinson must allege: (1) "truly extreme and outrageous" conduct; (2) either SGAS's intent to inflict severe emotional distress or knowledge of a high probability that conduct will cause severe emotional distress; and (3) "the conduct must in fact cause *severe* emotional distress." *Feltmeier v. Feltmeier*, 207 Ill. 2d 263, 798 N.E.2d 75, 80, 278 Ill. Dec. 228 (2003) (emphasis in original). To qualify as IIED, outrageous conduct must be "so extreme as to go beyond all possible bounds of decency and be regarded as intolerable in a civilized community." *Id.* at 83.

While Atkinson undoubtedly feels aggrieved by SGAS's conduct, the conduct alleged in the Amended Complaint does not rise to the level of "truly extreme and outrageous." Even "a continuous series of intentionally discriminatory acts" does not necessarily constitute IIED in Illinois. *Van Stan v. Fancy Colours & Co.*, 125 F.3d 563, 568 (7th Cir. 1997) (finding no viable IIED claim where the plaintiff's supervisors knew that he suffered from a bipolar disorder, fired him because the condition required him to work fewer hours, telephoned him at home while he was on vacation to tell him that he had been terminated, and falsified the reason for his termination). The

Seventh Circuit has also held that a plaintiff failed to allege extreme and outrageous conduct even though she contended that, among other things, her employer refused to allow her to supervise white subordinates, reprimanded her for no reason, refused to allow her to participate in a management incentive fund, forced her out of her management position, promised her a promotion she never received, took away from her major accounts and gave her less lucrative accounts in return, excluded her from office activities, monitored her telephone calls with an eavesdropping device and ignored concerns for her health and safety after her personal property was damaged on company property. *Harriston v. Chicago Tribune Co.*, 992 F.2d 697, 703 (7th Cir. 1993). Accordingly, this Court finds that Atkinson's allegations, among others, regarding SGAS's failure to provide a suitable workstation, consistent schedule, ergonomic keyboard, and adequate training, etc. are problematic, they do not rise to the level of extreme and outrageous conduct. Count IV is dismissed.

*2. Interference and retaliation under ERISA*

SGAS moves to dismiss Count V, alleging interference and retaliation under ERISA, for failure to state a claim. Atkinson alleges in Count V that SGAS violated his rights under ERISA by failing to take action to implement certain benefits to which Atkinson was entitled. The allegations in the Amended Complaint on this issue are too vague and conclusory to meet even the low standard of *Iqbal* and *Twombly*. Atkinson contends that he participated in certain plans and disability policies as an employee and incurred considerable costs as a result of his injury. Additionally, the Amended Complaint lacks any allegation of SGAS's specific intent to deprive Atkinson of his benefits, which is required to establish a claim under section 510 of ERISA. *See Isbell v. Allstate Ins. Co.*, 418 F.3d 788, 796 (7th Cir. 2005). "The loss of benefits to an employee as a result of an employer's action is not, by itself, sufficient to prove a violation of § 510." *Id.* Even if Atkinson could amend his allegations to state a claim, he fails to allege that he exhausted his administrative

7

remedies as a precondition to suit. *See Edwards v. Briggs & Stratton Ret. Plan*, 639 F.3d 355, 360 (7th Cir. 2011). This Court therefore dismisses Count V.

*3. Monetary and Trade Manipulation*

SGAS moves to strike Count VII under Rule 12(f) as duplicative of Atkinson's ADA claims in Counts I, II, and III. As stated on the record during oral argument, this Court agrees. The allegations asserted in Count VII are adequately addressed in the other ADA Counts and are thus redundant and need not be brought separately.

*4. Requirement of a Medical Exam in Violation of the ADA*

SGAS moves to dismiss or strike Count VIII, which alleges that SGAS required Atkinson to submit to a medical evaluation of his disability in violation of the ADA. SGAS asserts that this claim was never submitted to the EEOC and should be dismissed for failure to exhaust administrative remedies. Further, SGAS argues that the Amended Complaint fails to state a claim for a violation of 42 U.S.C. § 12112(d)(4)(A) because it does not show that SGAS required Atkinson to submit to the exam. Alternatively, SGAS moves to strike this Count as redundant of Atkinson's other ADA claims.

At the outset, this Court agrees that the allegations in this Count are redundant to Atkinson's ADA claims and thus will be stricken. Additionally, it appears from the EEOC charges that Atkinson did not raise this issue administratively and therefore he has failed to exhaust his administrative remedies. At oral argument, Atkinson asserted that he had indeed raised the issue of the medical exam administratively via a letter. Atkinson also presented several additional facts during the hearing that appeared not be in the current complaint.[1] This Court finds that Atkinson's claim regarding the medical exam should be considered part of his overall claims of discrimination under

---

[1] Ordinarily, a party opposing a motion to dismiss may not amend the complaint by way of arguments. *Pirelli Armstrong Tire Corp. Retiree Med. Benefits Trust v. Walgreen Co.,* 631 F.3d 436, 448 (7th Cir. 2011).

the ADA and thus this Court will not dismiss it for lack of exhaustion. Nevertheless, Count VIII is stricken as redundant of Counts I, II, and III.

**Conclusion**

Based on the foregoing discussion, this Court grants defendant SG Americas Securities, LLC's motion to dismiss or to strike Counts IV, V, VI, VII, and VIII of the Amended Complaint [43]. Counts IV and V are dismissed and Counts VI, VII, and VIII are stricken. Prior to the next status, the parties should meet pursuant to Rule 26(f) and conduct a planning conference and file a joint status report, proposing a discovery schedule. Status hearing set for Monday, September 21, 2015, at 9:00 a.m.

IT IS SO ORDERED.

Date: August 7, 2015

Entered: _____
SHARON JOHNSON COLEMAN
United States District Judge